We have a busy morning ahead of us today. We have four scheduled cases for argument. And we have one case that has been submitted on the briefs. Our first argument is 1Subsea IP Limited v. FMC Technologies, Inc. Case number 17-2437. Mr. Slayton, you're reserving five minutes of your time for rebuttal, correct? Yes, Your Honor. All right, you may proceed. May it please the Court, Bruce Slayton on behalf of 1Subsea IP UK Limited. In relation to the 018 and the 435 patents, Appellate 1Subsea will rest on its briefs in return for this opening argument. I'll first address the Board's erroneous finding that Claim 1 of the 893 patent is anticipated by Kelly. Notably, there is no dispute in this appeal regarding the teachings of Kelly. The entire proceeding was governed by the petitioner's and the Board's position that Kelly's Line 24 was the claimed production flowline. There's an alternative rejection in this patent too, right? Kelly plus Anderson. Yes, Your Honor. So you have to prevail on both of those grounds. Yes, Your Honor. Unpatentability. Okay. True. In fact, I could skip to the second theory if you're more interested in that. That's the one I'm a little more concerned about. Okay. From your perspective. So I'd like to hear what you have to say given that, as I understand it, the proposed grounds of unpatentability would just use all of Anderson, the assembly, the connectors, and then use all of that. And instead of connecting it to a wellhead, connecting it to a subsea tree. Is that the theory? And so, therefore, there would be direct connections between the connections and Anderson's assembly because that's what is in fact shown. It's a little different than that. But let's go through it and I think it will come evident to you. But I would state at the outset just to tee up this issue a little bit, what you're getting to is the mountable limitation in this connection. And, in fact, in terms of the bigger picture, neither Kelly nor Anderson teach a module mountable to a production flowline. And the petitioner, neither the petitioner nor the board, found that Anderson teaches that they're mountable. Consequently, if this court finds the preamble as a limitation, then reversal is straightforward and appropriate. If not, then we believe there's other grounds for reversal as well. But to address your question, Your Honor, I'll go to the second obviousest theory. So, Apelli asserts that the board found claim one obvious under the alleged second theory. According to Apelli, that theory teaches Kelly's module 26 is replaced with Anderson's module 83. Apelli is wrong. The board did not and could not adopt Apelli's second theory. For example, if the board adopted the alleged second theory, then the board's findings regarding the other limitations of claim one would have to be consistent therewith. And they're not. For example, for teaching the first limitation of claim one, that is the assembly mountable to a subsea tree and to a subsea production flowline, the board at appendix 109 and 115, citing the petition, only found, and I quote, as evident from figure one referring to Kelly, the choke assembly 26, that's Kelly's assembly, is capable of being mounted and is therefore mountable to a subsea tree and a downstream production flowline via collet body 22, which is also Kelly. In fact, at appendix 108, the board found that collet body 22 is part of Kelly's tree. Thus, pursuant to the board's only obviousness finding for the first limitation of claim one, the board found Kelly's module was not replaced but remains and is mountable to Kelly's collet body 22. And the board did not also find Anderson's module 83 is mountable to Kelly's tree and the production flowline via collet body 22 or any other structure. And I guess I'm trying to understand, why wouldn't we just, why wouldn't the theory just be you use all of Anderson's assembly 83 and then it's connectors 180 and 84 and that connector 84 just goes straight into the subsea tree that's disclosed in Kelly? The issue is not on the left-hand side of the tree, your honor, the issue is on the right-hand side. What I just described, why isn't that the claimed invention? Because the subsea production flowline, the module is not mounted on the subsea connection flowline, it's merely connected. And I would add that the petition didn't assert that in its petition, so it's not a ground available for the board to adopt. Because petitioner advanced no argument in the petition that Anderson module was mountable to a tree and to a production flowline via Kelly's collet body 22 or any other structure. Well, you're talking about Kelly's collet structure 22, but my question is more, forget about Kelly's collet structure 22, just look at Anderson and that self-contained unit to the right of its wellhead and now take all of that and using connector 84 of Anderson just connect that to Kelly's subsea tree. But the invention is directed to and the claim claims that the module is mounted to the tree and the production flowline together. This is about a plug-and-play module that lands on the tree and the production flowline. And when you remove it, it's detached from both. It's not detached from one at a time. In fact, we wouldn't want to do what Anderson is teaching. It's actually cumbersome because the flowline is attached separately to the end of the module. In the invention, the module is attached simultaneously with both. And if you remove the module, it's disconnected from the production flowline and the tree. And the petition doesn't support a different theory. The petitioner did not set forth an argument that Anderson's module was mountable to a subsea tree and a production flowline. That's nowhere in the petition. And therefore, that's my position, is that the board cannot have adopted that position and didn't adopt that position because it wasn't available under Magnum Oil Tools. This court under Magnum Oil Tools stated that the board cannot adopt a position that the party did not advance in the petition. Here, the petitioner didn't advance an argument that Anderson met the limitation. The Anderson module, excuse me, met the limitation of being mountable on the subsea tree and the production flowline. The petition at Ground 2, 1.0 only set forth Choke Assembly 26 of Kelly on Kelly's cut-up body 22. So the only theory in the petition which the board adopted at 109, appendix 109 and 115 is through via cut-up body 22. Cut-up body 22 remains in all embodiments. There's no getting rid of it. For example, if the board adopted the second theory, what happened to line 24 and cut-up body passage 66? What was the modification to that? It's no longer there. The board didn't address that because that theory was not available to the board under the petition. And I'd also point out that the adoption of the second theory would be inconsistent with another finding of the board on another limitation of Claim 1. That is the production flowline connector limitation. There, the board found at appendix 114, Kelly modified to incorporate Anderson's connectors 3484 meets the limitation, incorporation of connectors. The board did not find Kelly modified by replacing Kelly's module 26 with Anderson's module 83 meets the limitation. And based on the petition, as we just discussed, under Ground 2, 1.0, the board couldn't adopt that. All embodiments in the petition upon which the board could adopt and advance by the party were through Kelly's module 26 connected to Kelly's cut-up body 22, which led to, which we've argued about, line 24 attached to the cut-up body 22. There is no other embodiment where the... Can you identify where in the petition that theory, which we'll call Ground Number 2, Kelly plus Anderson, where the combination requires retaining Kelly's cut-up body 22 and those lines 20 and 24 in the combination where you're using Anderson's assembly 83 in combination with Anderson's connectors 180 and 84? Well, at 4791 of the appendix in the petition, Ground 2, 1.1 incorporates Ground 1, 1.1, and Ground 1 was the anticipation theory, which was based on Kelly alone. So they incorporated by reference what the finding I just read, which is, excuse me, Your Honor, as is evident from Figure 1 referring to Kelly. What page of the petition? 4791. 4791? Yes. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. So it refers back to 4780. So it says seed ground, they incorporated by reference. For an assembly mountable to a subseed tree in a subseed production flowline, it states seed ground 1, 1.1 supra. That is Ground 1, the anticipation theory, relying only on Kelly. So the only thing to support the prior meeting that limitation is Kelly's module 26. It remains. And cut-up body 22 remains. The entire claim is built upon that. It can't be that choke assembly 26 and cut-up body 22 meets the first limitation of claim 1 and then it switches below and module 26 and cut-up body 22 are no longer there. It would have to be consistent with it. Do you argue that to the Board in your Patent Owner response? Or in your blue brief to us? We argued that the Board did not adopt the second theory, and I'm backing up the reason why it didn't adopt the second theory. This is an additional reason. No, that's what I remember. That you argued that they only adopted a 102 theory and not a 103 theory. I don't remember you arguing in your blue brief that the 103 theory would be flawed because of something related to the preamble. In your blue brief. We were arguing that in the first instance that it was only the first obviousness theory that was adopted, which is Kelly module 26 remains and it's modified to add two connectors to it, separate connectors that Anderson. The second theory that came out of the briefing, from the red brief, was that, oh, no, that's not the only obviousness theory. There's another one. And we argued that the Board didn't adopt it for a variety of reasons, and I'm citing this for additional reasons of why the Board did not adopt it. We can't review something that wasn't adopted. You're pretty much into your rebuttal time right now. I did have a question with respect to the 893 pen, and this goes to the arguments that you're making. To what extent are your arguments based on the claims requiring direct connection? They're not based on direct connection. The parties have moved past that. So you agree that you waived? That's not an issue? I agree it's not an issue, Your Honor. Okay, great. All right, well then, do you want to save the rest of your time for rebuttal? Yes, sir. Okay. Yes, Your Honor. Good morning, and may it please the Court. Indy McKergee of Fish and Richardson for FMC. So what we're wrestling with this morning is a waived theory that then somehow takes issue with the fact-finding that the Board did. And so I've got to go through and correct some of the statements. Your colleague has said that they agree that the direct connection argument that's been addressed as having been waived was waived, and it's not an issue. I heard Mr. Sladen say that, and I'm heartened to hear that, because I think the entire mountability argument that he was trying to make that wasn't in the briefs is based on that direct connection. So if we have agreement on that and they're with us, then I think that argument is taken care of. The Anderson plus Kelly theory that was asked about, I think what may be most useful for the Court, unless the Court tells me otherwise, is to simply go to the Board's final written decision and see what they did, because I think that lays out the analysis. And so if we go to that decision, which starts on Appendix 89, and specifically if we move to Appendix 112, what we see is that the Board recognizes that FMC had argued, I'll call it, two flavors of combination invalidity based on Kelly plus Anderson. The first combination was taking the connectors of Anderson and swapping it into Kelly. And this is at Appendix 112, Your Honors. The second flavor was taking Anderson, the module, in its entirety, including the connectors, and swapping it in. So what the Board says is, in talking about that second flavor, and I didn't see this in one sub-C's brief, so I'll bring this to the Court's attention, it's swapping in Anderson so as to include Anderson's arrangement of connections at opposite sides of the module, i.e. connectors 84 and 28. Were it deleted on page 24 of the opinion, Appendix 112? Yes, Your Honors. Appendix 112, page 24 of the actual decision. And where, in the middle of the paragraph? You've got to point me to where you're at. It is the end of the first full paragraph, Your Honor. Okay. All right. Thank you. And then, so in that first paragraph, the Board lays out what the two flavors of obviousness are. Then it moves to the second paragraph and says, We agree with FMC that a skilled artisan would have recognized the benefit of modifying Kelly's retrievable module to incorporate Anderson's teachings of separate and independent connectors for the module. That is the common thing that's in both flavors of Anderson plus Kelly in validity. It's the connectors. So what the Board is saying here, and it's making a fact-finding, of course, it's looking at it from the perspective of one of ordinary skill, is that it's the connectors that really matter, whether you're swapping the whole module or just the connectors. And then the Board takes that in the subsequent page and says, In other words, using Anderson's separate and independent connectors would permit the unseen production flowline in Kelly to be disconnected from the module without also having to disconnect the module from the tree. And so what is that saying? It's saying that once you swap in Anderson's connectors, it's connecting directly to this flowline. And we don't have this direct debate anymore, and again, I'm glad to hear that. But the Board is saying you swap in Anderson and all of this direct business goes away. So that is Anderson plus Kelly. I heard Mr. Slayden say something about, well... So to what extent does the argument you just made implicate the direct connection argument? You're saying that's exactly what this is, right? So the direct connection argument, it's a little bit tricky in that it was never made below. And so we're doing this a little bit on the fly. If we were still debating the direct connection issue, the argument would have been that the little pipe section 24, is that replaced in the second flavor of Anderson plus Kelly when you swap in the connectors? And if you go to Anderson and you look at, I think it's element 180, you see that the connection would be directly from Anderson's connector to the production flowline. So if there were some direct debate, which there's not, apparently, that debate would be sort of vitiated by the combination of Anderson plus Kelly. But I guess the patent owner believes that your proposed combination of Kelly plus Anderson still retains the collet body 22 in lines 20 and 24 from Kelly in the combination of Anderson and Kelly. Is that right or is that wrong? Well, what the board said, and I didn't mean to speak over your honor, what the board said is you swap it in and when you look at what the swap is, sort of going back to our petition, you see that, in fact, that line 24 disappears. So Anderson's connector goes directly to the production flowline, if I understood the question correctly. So you believe, the board believes, that lines 20, 24 and collet body 22 are not part of the combination when you combine Anderson and Kelly when you use Anderson's assembly 83? That's correct, your honor. In substitution of Kelly's choke assembly? Yes, your honor. But I guess the patent owner is pointing to something in the petition that suggests otherwise in its view. I wasn't entirely sure what the patentee was pointing to. If we go back to the petition, and I'm happy to do this for the court's benefit if the court would like, what you see is that, of course, it's a combination of Kelly plus Anderson. And so when the petitioner is talking about the preamble, the mountability, all that, you look at the combination and Kelly, in fact, was addressed squarely in the petition. That preamble section was addressed squarely. And what's interesting is that one sub-c never took any issue with it. So when they filed their patent owner response, there's nothing in there that says, oh no, FMC is reading the preamble incorrectly and we think it is a limitation, it should be read this way and so on. And that's where the waiver argument creeps in. May I continue? I wasn't entirely sure for Mr. Slayton's argument whether the Kelly anticipation ground is still in play or not. So I'll just step through it briefly. There are three elements that one sub-c says are missing from that. And I think we're quite comfortable resting on our briefs on those three elements, unless the court has specific questions. Thank you, Your Honors. Your Honor, I want to make sure that when I responded to your question on whether direct connection is still at issue, I want to make sure we're understanding that I wasn't waiving the anticipation arguments or other obvious misarguments. I'm just saying that we understand the claim when read, it could allow for some intervening parts. And that's what I was saying, that there's no longer a dispute. I want to make clear that I didn't waive my arguments. A few points to the comments. Number one, during the entire proceeding, line 24 was the production flow line. In the petition, in the institution decision, during the all discovery, and then finally in the final written decision, all of a sudden, it's not. It is the part of Kelly's tree. So this waiver argument is particularly egregious because we went through the entire proceeding with line 24 being the production. Is that fair to say? Because I understood the petitioner's reply to make it pretty clear that they were pointing to lines 20 and 24 as being part of Kelly's tree. And then you asked to file a certifying, which was granted, and you addressed other arguments, but you didn't address this argument in your certifying, nor did you argue anything during the oral argument before the board about this question of what lines 20 and 24 represent in Kelly. And this is a waiver issue I brought to your attention. If you're disavowing a position and you want to give notice to the patent owner, I think you would use the claim term at issue. If you review the reply, they never once use the term production flow line. That's not in the petition, in their reply at all. You're saying they didn't refer to lines 20 and 24 in their reply as part of the subsea tree? No, I'm not. No, Your Honor, I'm sorry. What they did, the best they did in the reply is that it's both. That they said while there are flow lines, they're also part of the tree. So they had a little evolution of their position. In the petition, it was a production flow line. Expert testified it was a production flow line. Went through all discovery production flow line. At the reply, at the last minute, they say, no, it's not the production flow line, it's the tree. And then turn that back around on us and say, now you can argue the arguments you would have made originally when line 24, if it would have been line 24, it would have been the tree to begin with. We would have made different arguments, Your Honor, and that's our position. Waiting until the last minute in the late of the proceeding at a reply seems particularly unfair, even if it gave us notice. I don't believe it did. You filed a cert reply, right? Yes, Your Honor. Okay. But it wasn't clear to us that they're, the point is it wasn't clear to us they gave notice they were completely disavowing their position. They never actually used the term production flow line in their reply. I think if you're disavowing a position that you've taken for the last year and a half, through the entire proceeding, and your experts never disavowed it, then it's not waiver. I mean, I can't, it seems to me that we shouldn't be foreclosed to making the arguments that would have been relevant during the entire proceeding if their position was that line 24 was part of the tree instead of the production flow line. I think we have your argument. Thank you very much. Thank you.